SOBRINOS DE EZQUIAGA, PLAINTIFFS AND APPELLANTS, *v.* BRIGANTI, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Guayama in an Action of Debt.

No. 2895.—Decided May 12, 1923.

DISMISSAL — LACHES — COMPROMISE — DISCRETION OF COURT. — This action was brought in 1917 and in 1919 the case was transferred to the court of the defendant's residence. In 1922, at the instance of the defendant, it was dismissed for laches over the objection of the plaintiff. *Held:* That the record shows that although the case was for a long time dormant, the parties had been active, especially the plaintiffs, for on several occasions they had endeavored to effect a compromise with the defendant, who attended several conferences held for that purpose; therefore the order of dismissal was an abuse of discretion.

ATTACHMENT—GARNISHMENT—PUBLIC FUNDS.—Funds in the possession of the Treasurer of Porto Rico payable to a certain person can not be attached in an action brought against that person.

The facts are stated in the opinion.
*Messrs. E. Acuña* and *L. Janer* for the appellants.
*Mr. M. A. Martínez* for the appellee.

· MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

. This is an appeal from a judgment dismissing an action because of its abandonment by the plaintiffs, and from an order dissolving an attachment. In their brief the appellants assign error as follows: 1, In sustaining the defendant's motion for dismissal; 2, in ordering the dissolution of the attachment.

. With regard to the first assignment, the record shows that on June 8, 1917, a complaint was filed in the District Court of San Juan, Second Section, to recover the sum of $1,774.38 from Domingo Briganti. After the defendant had been summoned he demurred and moved for a change of venue to the district court of his domicile. Both parties were heard and the court sustained the motion on September 30, 1919.

· · The case was docketed in the District Court of Guayama and was left dormant. On May 1, 1921, the defendant moved for its dismissal because of its abandonment. The plaintiffs opposed the motion, alleging under oath that the lack of action was not chargeable to them alone, but also to the defendant, who had not asked that a day be set for hearing his demurrer and who had been holding conferences with the plaintiffs looking to a compromise of the suit. The defendant responded under oath that he never negotiated for a compromise of the case; that on several occasions he was approached by the plaintiffs with offers to compromise which he did not accept, and that he never agreed that the case should be retarded. On March 13, 1922, the parties filed a stipulation submitting to the court the matter of dismissal and on May 10, 1922, the court rendered the judgment appealed from.

The appellants admit that courts have inherent discretional power to dismiss actions for abandonment, but

contend that the District Court of Guayama abused its discretion in this particular case.

In the cases of *Estate of Chavier* v. *Estate of Giráldez,* 15 P. R. R. 145, and *Ensenada Estates, Inc.,* v. *Treasurer of Porto Rico,* 26 P. R. R. 740, this Supreme Court made a careful study of the question of law here involved and after analyzing the facts reversed the judgments of the court below. A similar conclusion is necessary in this case. The practice of disposing of cases by judgment because of lack of action is good and should be encouraged. A defendant should not be left indefinitely under the weight and worry of a pending suit. Courts should not have their dockets crowded with cases entirely abandoned, or which amount to threats rather than real controversies necessarily requiring settlement by the courts. But that is not the case here. The record shows, in our opinion, that although the case was dormant for such a long time, the parties were not inactive, particularly the plaintiffs, who on several oc casions attempted to effect a compromise, and the main purpose of a compromise is to avoid a suit or to terminate one that had been commenced. Section 1711 of the Civil Code. The defendant alleges that the conferences contemplating a compromise were not initiated by him, but he admits having participated in them, and this shows that there was activity in negotiating a compromise.

Let us examine the second assignment. At the instance of the plaintiff a *lis pendens* attachment was levied on a certain sum of money pending payment in the Insular Treasury for the construction of the aqueduct of the Municipality of Maunabo, the contract for the work having been given to the defendant as the best bidder. The defendant alleged that the said money was exempt from attachment and moved for its dissolution. The plaintiffs objected and the court held for the defendant.

The question of law involved in this second assignment of

error has also been considered and settled by this Supreme Court. In the case of *Lamboglia* v. *School Board of Gua-yama,* 15 P. R. R. 299, the opinion of the court was delivered by Mr. Justice MacLeary. It covers fully both the law and the jurisprudence and holds that "Funds in the hands of the treasurer of a school board, or in the bank on deposit to his credit, are not subject to writs of garnishment, execution, or attachment." And in the case of *Fernández* v. *Oben,* 26 P. R. R. 137, citing with approval the *Lamboglia Case, supra,* it was held that "A school board or the members thereof are not subject to garnishment, as it would be against public policy to permit them to be summoned as garnishees."

Applying the same reasoning to this case, it is clearly necessary to hold that the funds in the possession of the Treasurer of Porto Rico, while under his custody, are not subject to attachment, although they may belong to the defendant. As early as 1846 the Supreme Court of the United States, in *Buchanan* v. *Alexander,* 45 U. S. 24, 25, expressed itself as follows:

"The important question is, whether the money in the hands of the purser, though due to the seamen for wages, was attachable. A purser, it would seem, cannot, in this respect, be distinguished from any other disbursing agent of the government. If the creditors of these seamen may, by process of attachment, divert the public money from its legitimate and appropriate object, the same thing may be done as regards the pay of our officers and men of the army and of the navy; and also in every other case where the public funds may be placed in the hands of an agent for disbursement. To state such a principle is to refute it. No government can sanction it. At all times it would be found embarrassing, and under some circumstances it might be fatal to the public service.

"The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United

States, as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seamen."

For the foregoing reasons we are of the opinion that the judgment appealed from should be reversed and the order appealed from affirmed.

*Reversed and remanded.*

Justices Wolf, Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.